UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEICO COMPANIES, LLC, SPARTAN TOOL, LLC, HEICO HOLDING, INC., PETTIBONE, LLC, and COLE TAYLOR BANK solely as Trustee under Trust 94013,<br><br>Plaintiffs,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE CO., d/b/a FM GLOBAL,<br><br>Defendant. | Case No. 05 C 1095<br><br>Judge Joan B. Gottschall<br><br>Magistrate Judge Martin C. Ashman |

**MEMORANDUM OPINION AND ORDER**

Pursuant to Judge Filip's order of October 3, 2007, plaintiffs Heico Companies, LLC, Spartan Tools, LLC, Heico Holding, Inc., Pettibone, LLC, and Cole Taylor Bank (collectively "Heico") and defendant Factory Mutual Insurance Co. ("FM") have submitted simultaneous briefs and responses addressing the following disputed insurance policy construction issues: (1) the meaning of "replace" as used in the policy, with specific reference as to whether Heico's Mishawaka facility "replaced" its Mendota facility; and (2) the meaning of "like size, kind and quality" under the policy. Although not within the ambit of Judge Filip's order, both sides have also addressed the issue of whether Heico's claim for recovery of the replacement cost value of its destroyed Spartan Tool, LLC manufacturing plant is barred because Heico failed to expend the replacement cost value of the plant on qualifying capital expenditures within the contractual two-year period. For the reasons set forth below, the court holds that: (1) the Mishawaka facility

1

did not "replace" the Mendota facility as that term is employed within the insurance policy; and (2) the term "like kind and quality" shall be construed by the court as meaning "sufficient to restore the lost property to its pre-loss condition." The court also holds that Heico's claim for the replacement cost value of the property is not barred by the policy's two-year limit in which to expend qualifying capital expenditures.

## I. BACKGROUND

On August 7, 2003, Heico's Spartan Tools, LLC ("Spartan Tool") manufacturing complex in Mendota, Illinois (the "Mendota Plant") burned. The blaze destroyed a number of buildings in the complex and damaged several more, while others in the complex were spared. Some machinery, inventory and equipment were also destroyed in the blaze.

The Mendota Plant was one of a large number of Heico-owned properties covered under Insurance Policy No. FC179 ("the policy"), which was issued by FM to Heico on August 1, 2003 with a maximum liability of nine hundred million dollars. Of particular relevance to the construction issues at bar is section D of the policy, specifically subparagraphs L.(1) through L.(3) and L.(8) which contain provisions addressing "the physical loss amount" of insured property, including buildings. The relevant paragraphs read:

> L. On all other property, the loss amount will not exceed the lesser of the following:
>
>   1) The cost to repair
>
>   2) The cost to rebuild or replace on the same site with new materials of like size, kind and quality

> 3) The cost in rebuilding, repairing or replacing on the same site, but not to exceed the size and operating capacity that existed on the date of loss.
>
> …
>
> 8) The Actual Cash Value if such property is:
>
>> a) useless to the insured
>>
>> b) not repaired, replaced or rebuilt on the same or another site within two years from the date of loss
>
> The insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss. As a condition of collecting under this item, such expenditures must be unplanned as of the date of loss and be made at an Insured Location under this Policy. This item does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION.
>
> References and Application. The following term(s) wherever used in this policy means:
>
>> a) Actual Cash Value:
>>
>>> The amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

The terms of subparagraph L thus offer three alternative proposed pricing regimes: (1) a *hypothetical* cost to rebuild or replace on the same site with new materials of like size, kind, and quality (which would be elected if the insured chose not to rebuild the destroyed property) specified in subparagraph L.(2); (2) an *actual* cost incurred if the insured chose to rebuild, repair, or replace on the same site as specified in subparagraph L.(3); and (3) an "Actual Cash Value," specified in subparagraph L.(8) to be paid if the property is useless to the insured or if the property is not repaired, replaced or rebuilt within two years from the date of loss. The Actual Cash Value is latterly defined as the

amount it would cost to replace insured property, with a deduction for depreciation of the property. According to Heico, the Actual Cash Value would typically be elected if the insured elected not to repair or replace the insured property.

Since the policy provides for payment of the lesser of the alternate loss amounts, a party electing not to rebuild or replace the lost property would expect to recover the Actual Cash Value from the insurer. However, the provisions of subparagraph L.(8) provide that the insured may alternatively elect to receive the higher hypothetical cost of replacement (as defined in subparagraph L.(2)) if the proceeds are expended upon other capital expenditures related to the Insured's operations and not planned at the time of loss, within two years from the date of loss.

Following the fire, FM engaged engineers to prepare a reconstruction plan for the Mendota Plant and solicited contractors to bid on the plan. The reconstruction plan called for repairing those buildings which were capable of repair and replacing those buildings that had been destroyed. However, within a few months of the fire, Heico moved its Spartan Tool operations to another site owned by Heico in Mishawaka, Indiana (the "Mishawaka Plant") and outfitted the plant to accommodate Spartan Tools' operations. This move was paid for by FM, which alleges that Heico assured FM that the relocation was "temporary" pending a decision on a permanent resolution of the loss. FM also claims that it paid Heico in excess of $16.2 million, representing the Actual Cash Value of the lost, damaged, or destroyed buildings at the Mendota Plant based upon Heico's reconstruction plan in addition to the costs of moving to, and outfitting, the Mishawaka Plant.

On September 3, 2004, Spartan Tool's president, Tom Pranka ("Pranka") informed FM via a letter that Spartan Tool was electing not to repair or replace the property lost, damaged, or destroyed by the fire but was rather electing to pursue a replacement cost measure of the loss under the capital expenditure provision of subparagraph L.(8). Pranka also informed FM that Spartan Tool anticipated being able to discuss potential proposed capital expenditures with FM "in the near future."

On February 8, 2005, Heico filed the instant action in the Circuit Court of Cook County alleging breach of contract. The case was removed to the U.S. District Court for the Northern District of Illinois on February 23, 2005.[1] The court now addresses these issues of policy construction.

## II. ANALYSIS

In Illinois, construing the provisions of an insurance policy is a matter of law. *Outboard Marine Corp. v. Liberty Mut. Ins.*, 607 N.E.2d 1204, 1212 (Ill. 1992); *see also Transamerica Ins. Co. v. Interstate Pollution Control, Inc.*, No. 92 C 20247, 1995 WL 360460, at *11 (N.D. Ill. June 16, 1995). The court's role is to determine the parties' intent by looking to the policy as a whole, "with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Outboard Marine*, 607 N.E.2d at 1212. If there is any ambiguity in the language of the policy, it must be construed against the insurer who drafted the policy and in favor of the insured. *Id.* at 1212-13. Moreover, if reasonable definitions of a term in two or more dictionaries exist, creating an ambiguity, that ambiguity must be resolved in favor of the insured. *Id.* at 1218; *see also Dora Twp. v. Indiana Ins. Co.*, 400 N.E.2d 921, 922 (Ill. 1980).

---

[1] The case was transferred to this court by order of the Executive Committee on March 6, 2008.

5

## A. Definition of "Replace" as Used in the Policy

The relevant portions of the policy at issue in this case use "replace" five times: (1) "the cost to rebuild or replace on the same site"; (2) "the cost in rebuilding, repairing or replacing on the same site"; (3) "not repaired, replaced or rebuilt on the same or another site"; (4) "insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed"; and (5) "Actual Cash Value [is defined as] [t]he amount it would cost to repair or replace insured property, on the date of loss …." Each of these uses, in the context of the construction issues at bar, pertains to the act of replacing the property at the Mendota Plant site that was destroyed in the fire.

FM argues that Heico has "replaced" the destroyed Mendota Plant by relocating and outfitting another Heico-owned property covered by the policy, *viz.*, the Mishawaka plant. According to FM, Heico is attempting to obtain a double recovery: it received funds for "replacing" the Mendota Plant with the Mishawaka Plant (i.e., "Actual Cash Value of the Mendota Plant) and it also seeks the recovery of repair or replacement costs to be expended on other capital expenditures because Heico claims it elected not to "replace" the Mendota Plant when it burned to the ground. Heico argues that because it relocated the functions of its Mendota Plant to the Mishawaka Plant, which was already owned by Heico, it has elected not to "replace" its Mendota Plant, and is therefore eligible to receive the higher "hypothetical" cost of replacement under the policy's election clause, L.(8), to be employed in capital expenditures at Heico's other facilities.[2] The question before the court thus centers on whether Heico "replaced" its Mendota Plant

---

[2] Heico omits to mention that it has already received funds from FM to facilitate the move to the Mishiwaka Plant and has also received funds equaling the Actual Cash Value of the Mendota Plant.

when it moved its operations to its already-owned (and insured under the same policy) Mishawaka Plant.

The Oxford English Dictionary defines "replace," in relevant part, as: "2. To take the place of, become a substitute for (a person or thing) …. 3. To fill the place of (a person or thing) with or by a substitute …. b. To provide or procure a substitute or equivalent in place of."  XIII OXFORD ENGLISH DICTIONARY 642 (2d ed. 1989).  The American Heritage Dictionary defines "replace" as: "1. To put back into a former position or place. 2. To take or fill the place of. 3. To be or provide a substitute for. 4. To put back or return; refund."  AMERICAN HERITAGE DICTIONARY 1479 (4th ed. 2000).  In the accompanying note on synonyms, the American Heritage Dictionary also adds: "To replace is to be or to furnish an equivalent or substitute, especially for one that has been lost, depleted, worn out, or discharged." *Id.*

Neither definition of "replace" provided by the dictionaries is very helpful to the court in resolving the question of whether the Mishawaka plant "replaces" the Mendota Plant.  The Mishawaka Plant, from which Spartan Tools continues its operations, "fills the place of [the Mendota Plant] with or by a substitute" (the Mishawaka Plant).  Likewise, the Mishawaka Plant "takes or fills the place of," or "provides a substitute for" the destroyed Mendota Plant.  Nevertheless, a plain reading of the language of the policy establishes that if Heico has a total of X plants and the insured Mendota Plant is destroyed, leaving Heico with X-1 plants, then Heico is entitled to a replacement plant built "on the same site" as the destroyed plant, or the cost of a replacement for that plant, to restore it to its former total of X plants or the value thereof.

Given, therefore, that there is an ambiguity in the definition and use of the term "replace," Illinois law states clearly that the ambiguity is to be construed in favor of the insured. *Outboard Marine*, 607 N.E.2d at 1212-13. The court therefore finds that Heico did not "replace" its Mendota Plant when it relocated its Spartan Tools operations to its already-owned Mishawaka Plant.

This does not mean, however, that Heico is entitled to a double recovery, as FM suggests that it is attempting to establish. If Heico prevails in this suit, any recovery of the "hypothetical" replacement cost must be offset by the Actual Cash Value and relocation expenses already paid to Heico by FM.

**B. The Use of "Like Kind or Quality" in the Policy**

The next issue to be addressed by the parties, the meaning of "like size, kind and quality" under the policy, seems to present no significant dispute at all. In its brief, FM accuses Heico of claiming that, in its valuation of the Mendota Plant, every damaged or destroyed building must be reconstructed to its pre-fire configuration, with precisely the same layout with which the building was originally constructed. FM construes this to mean that Heico is seeking the costs of an identical, piece-by-piece reconstruction of its Mendota Plant, down to the last detail. FM contends that this is senseless when, as it claims is the present case, less costly substitutes are available to rebuild the structures to their original state.

Heico vehemently rejects FM's interpretation of its argument, stating that "new materials of like kind and quality" means simply "new materials of like kind and quality" and does not necessarily mean identical. Both sides cite to *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005). In *Avery*, the Illinois Supreme

Court held that after market automobile parts were of "like kind and quality" as Original Equipment Manufacturer (OEM) parts. *Avery*, 835 N.E.2d at 829. According to the court, the term "like kind and quality," as used in the relevant policies, meant "sufficient to restore [the damaged property] to its pre-loss condition." *Id.* Heico argues that the court should not get bogged down in trying to parse out the difference between "identical" and "functional equivalence" to a jury.

Illinois law is clear upon the terms at issue: "like kind and quality" means "sufficient to restore the Mendota Plant to its pre-loss condition." Exact identity of structure is therefore not required. Whether the valuation of materials that would be used in either party's plan to restore the Mendota Plant are of "like kind or quality" to those present in the original plant is a question of fact for the jury to address. Obviously the greater the congruence between the value of the restored plant and its pre-loss condition, the easier it will be for the jury to determine that the cost required to return the plant has been provided. Nevertheless, it is for the jury to decide if a valuation plan would contain materials of "like kind or quality" sufficient to restore the Mendota Plant to its pre-loss condition.

## C. The Two-Year Limitation on Heico's Ability to Elect Repair or Replacement Cost Basis to be Expended on Capital Expenditures

Finally, the parties address a third issue which has emerged, but which was not part of Judge Filip's original order of October 3, 2007. Despite the fact that the parties' arguments exceed the ambit of Judge Filip's order, the issue has been fully briefed by both parties and the court will therefore address it.

The parties' dispute centers upon the portion of the election clause of L.(8) that reads:

> Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss. As a condition of collecting under this item, such expenditures must be unplanned as of the date of loss and be made at an Insured Location under this Policy.

L.(8). According to FM, Heico does not dispute that it received FM's replacement cost valuation of $24 million replacement cost value of the loss and over $16 million in cash (the Actual Cash Value of the Mendota Plant plus the moving expenses incurred in the move to the Mendota Plant). FM contends that Heico was required to spend the loss proceeds on capital expenditures within two years of the loss to be entitled to recover under the "capital expenditure' provision in subparagraph L.(8). It is FM's argument that spending the loss proceeds on the claimed capital expenditures is a condition precedent to recovery under that subparagraph, and since Heico did not expend the $24 million replacement cost value on qualifying capital expenditures within the required two year period, it is barred from any recovery under that section of subparagraph L.

Heico claims that FM's argument that it is required to spend the $24 million replacement cost value on qualifying capital expenditures within two years places it in an untenable "Catch-22" situation, requiring it to spend the proceeds before it qualifies to receive the proceeds. Heico argues that FM's contention that it should be required to spend $24 million of its own money before qualifying to recover the insurance replacement cost value deprives Heico of the benefit of the applicable policy terms. Heico contends that the intention of the clause was to prevent it from having to risk spending its own money prior to recovery.

FM's argument that a requirement that the replacement cost value be expended by Heico on qualifying capital expenditures is a condition precedent to recovery of the

replacement cost value fails on its face. Under Illinois law, a condition precedent is some act that must be performed or event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform. *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins.*, 962 F.2d 628, 633 (7th Cir. 1992) (citing *Kilianek v. Kim*, 548 N.E.2d 598, 600 (Ill. App. Ct. 1989)). Furthermore, "insurance contracts are to be construed according to the sense and meaning of the terms which the parties have employed, and if they are free from ambiguity, their terms are to be understood in their plain, ordinary, and popular sense." *Ansvar America Ins. Co. v. Hallberg*, 568 N.E.2d 77, 79 (Ill. App. Ct. 1991).

Nothing in a plain reading of "[l]oss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss" could lead this court to understand that Heico was required, as a condition precedent, to spend an amount equal to the recovery cost value of its Mendota Plant on qualifying capital expenditures prior to recovery of the funds from FM. A plainer and more straightforward reading of the contractual language yields the understanding that if Heico chose to elect this recovery option, as it was entitled to do under subparagraph L.(8), then it would be required to spend that recovery on qualifying capital expenditures within the two year period specified by the contract. If it failed to do so, FM would presumably have a cause for an action for breach of contract against Heico.

Heico, however, unambiguously chose this option and so notified FM of its intent to do so on September 3, 2004.[3] Heico was not required by the terms of the insurance

---

[3] On September 3, 2004, Pranka sent a letter to Marvin Pfluger ("Pfluger") of FM, stating, *inter alia*, that:

11

contract to spend its own funds, equal to the amount of the replacement cost value, prior to recovery of the replacement cost value from FM.[4] FM's argument that Heico is therefore time-barred from recovery of the replacement cost value of the Mendota Plant fails.

### III. CONCLUSION

For the reasons set forth above, the court holds that: (1) the Mishawaka facility did not "replace" the Mendota facility as that term is employed within the insurance policy; and (2) the term "like kind and quality" shall be construed by the court as meaning "sufficient to restore the lost property to its pre-loss condition." The court also holds that Heico's claim for the replacement cost value of the property is not barred by the policy's two-year limit in which to expend qualifying capital expenditures.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 12, 2008

---

[T]his will confirm that [Heico is] electing not to repair or replace the remaining insured and real property lost, damaged or destroyed in the loss, and [is] electing loss settlement on the repair/replacement cost value basis. Your insureds intend to expend such loss settlement proceeds on other capital expenditures related to the insureds' operations, per the policy. We anticipate being able to discuss potential proposed capital expenditures with you in the near future.

[4] Heico is not, however, eligible to make a double recovery here. It has already recovered proceeds from FM for the Actual Cash Value of the Mendota Plant. It may not recover the Actual Cash Value plus the replacement cost value it elected under the terms of subparagraph L.(8). *See* II. A. *supra*.